UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) CR-04-24-B-W<br>DANIEL RALPH BISHOP, )<br>)<br>Defendant. ) | |

**SENTENCING ORDER**

On September 8, 2004, a jury found Defendant Daniel Ralph Bishop guilty of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Scheduled to be sentenced on May 9, 2005, Mr. Bishop has raised three legal issues: 1) whether his 1978 conviction for burglary is a violent felony; 2) whether his 1991 conviction for possession of an unregistered firearm is a violent felony; and, 3) whether he should be entitled to a two-level reduction for acceptance of responsibility. This Court concludes that Mr. Bishop's 1978 conviction for burglary and his 1991 conviction for possession of an unregistered firearm are violent felonies within the meaning of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and that, because he went to trial and failed to convince a jury that his possession of the firearms was justified, he is not entitled to a two-level reduction under U.S.S.G. § 3E1.1(a).

**I. DISCUSSION**

**A. Whether his 1978 Conviction for Burglary is a Violent Felony**

Mr. Bishop was convicted on October 5, 1978 in Piscataquis County Superior Court in the State of Maine of a July 25, 1978 burglary at Berg's General Store. He was sentenced to eighteen months in the Maine Correctional Center. Mr. Bishop argues this conviction should not count as a "violent felony" under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B). Mr. Bishop

concedes his 1978 burglary conviction would constitute a predicate felony for ACCA purposes if he committed the crime as a principal.[1] *See United States v. Fiore,* 983 F.2d 1, 4 (1st Cir. 1992). However, he questions whether the ACCA definition of "violent felony" applies if he had been found guilty of the burglary only as an accomplice.

Mr. Bishop's argument tracks the logic of *Shepard v. United States,* __ U.S. __, 125 S. Ct. 1254 (2005): if the statute allows for both predicate and non-predicate felonies, and if court documents fail to clarify the facts underlying the crime, the court cannot engage in fact-finding without running afoul of the Sixth Amendment. *Id.* at 1262. Here, Mr. Bishop contends that, because Maine law permits accomplice liability without requiring an overt act, he may have been convicted of being an accomplice, which he argues would not constitute a predicate felony. Mr. Bishop, however, is incorrect.

First, in examining the indictment and the judgment, as permitted by *Shepard,* there is no evidence Mr. Bishop was charged and pleaded guilty as an accomplice, and not as a principal.[2] Mr. Bishop's contention that he was only an accomplice is not substantiated by the court documents, and under *Shepard,* this Court cannot look beyond "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 1257. A federal sentencing court "may not hold a mini-trial on the particular facts underlying the prior offense in an effort to determine

---

[1] This Court has already made this determination. *See United States v. Bishop,* 350 F. Supp. 2d 127, 130-32 (D. Me. 2004). In reviewing *Bishop,* this Court painted with too broad a brush when it stated that in *Taylor v. United States,* 495 U.S. 575 (1990), the Supreme Court "recognized that Congress included all types of burglaries as predicate offenses of the ACCA because every burglary inherently presents a serious potential risk of physical injury to another." *Bishop,* 350 F. Supp. 2d at 132. As *Shepard v. United States,* __ U.S. __, 125 S. Ct. 1254, 1257 (2005), made clear, this statement is true only as to generic burglaries, not to other types of burglaries, such as the burglary of a motor vehicle or boat.

[2] The indictment charges that "DANIEL R. BISHOP did enter in a structure, to wit, Berg's General Store, of the property of Ralph Berg, knowing that he was not licensed or privileged to do so, with the intent to commit theft therein." The judgment reflects that Mr. Bishop pleaded guilty to burglary. There is no mention of accomplice liability.

whether the defendant's conduct was violent." *United States v. Dueno,* 171 F.3d 3, 5 (1st Cir. 1999); *see also United States v. Damon,* 127 F.3d 139, 144 (1st Cir. 1997).

Second, Mr. Bishop's description of accomplice liability in Maine, though correct as far as it goes, does not tell the whole story. It is true, as he states, that Maine law does not require an "overt act of assistance or actual physical participation in the commission of the crime." *State v. Pheng,* 2002 ME 40, ¶ 9, 791 A.2d 925, 928. However, Maine law does require more than "mere presence at the scene"; it requires proof of "any conduct promoting or facilitating, however slightly, the commission of the crime." *Id.* ¶ 9, 791 A.2d at 927. *Pheng* itself states that accomplice liability may attach if "a person, intending that a crime be committed, aids by actively furnishing advice and encouragement." *Id.* ¶ 9, 791 A.2d at 927-28. Thus, for example, a person who drives an automobile to the scene of a burglary may be convicted of burglary, even though another actually entered the building. *State v. Bradley,* 414 A.2d 1236 (Me. 1980).

Finally, the First Circuit quickly dispatched a similar argument in *United States v. Mitchell,* 23 F.3d 1 (1st Cir. 1994). *Mitchell* states that "aiding and abetting 'is not a separate offense' from the underlying substantive crime." *Id.* at 2 (quoting *United States v. Sanchez,* 917 F.2d 607, 611 (1st Cir. 1990), *cert. denied,* 499 U.S. 977 (1991)). *Mitchell* held that "aiding and abetting the commission of a crime of violence is a crime of violence itself." *Id.* at 3.

This Court concludes Mr. Bishop's 1978 conviction for burglary constitutes a "violent felony" under § 924(e) and U.S.S.G. § 4B1.4. *See* § 924(e)(2)(B)(ii)(the term "violent felony" includes burglary); *Bishop,* 350 F. Supp. 2d at 130-32.

### B.  Whether his 1991 Conviction for Possession of an Unregistered Firearm Constitutes a Violent Felony

On October 23, 1990, Mr. Bishop was indicted by a Grand Jury in the United States District Court for knowing possession of "a loaded . . . 12 gauge shotgun . . . with a barrel length

3

of approximately 14 ¾ inches and with an overall length of approximately 24 ¼ inches, not registered to him in the National Firearms Registration and Transfer Record." On April 12, 1991, Mr. Bishop pleaded guilty to a violation of 25 U.S.C. § 5861(d), possession of an unregistered firearm, and was sentenced to thirty months incarceration.

The First Circuit has held that "possession of a sawed-off shotgun is a 'violent felony' within the meaning of ACCA." *United States v. Fortes,* 141 F.3d 1, 8 (1st Cir. 1998), *cert. denied,* 524 U.S. 961 (1998). Undeterred, Mr. Bishop argues that *Fortes* is not good law because: (1) the Sixth Amendment right to a jury trial requires that the jury, and not the court, determine whether his conviction for possession of an unregistered firearm constitutes a "violent felony"; (2) the Ninth Circuit, upon which *Fortes* relied, has not "followed its own logic"; and, (3) *United States v. Doe,* 960 F.2d 221 (1st Cir. 1992), is more persuasive. This Court disagrees. *Fortes* remains the "law of the circuit," and this Court, as a lower court, is required to apply it. *See United States v. Chhien,* 266 F.3d 1, 11 (1st Cir. 2001), *cert. denied*, 534 U.S. 1150 (2002). There is no indication the First Circuit is going to revise its holding in *Fortes. See Dueno,* 171 F. 3d at 4 (citing *Fortes* with approval). But, if *Fortes* is to be changed, it is for the First Circuit, not this Court, to change it. Under *Fortes,* Mr. Bishop's 1991 conviction for possession of an unregistered firearm constitutes a "violent felony" within the meaning of the ACC.

### C. Whether Mr. Bishop Should be Accorded a Two-Point Reduction Under U.S.S.G. § 3E1.1 for Acceptance of Responsibility

Mr. Bishop's final argument is that he should be accorded a two-point reduction for acceptance of responsibility under Guideline § 3E1.1.[3] Mr. Bishop did not plead guilty to this crime. Instead, he proceeded to trial and was convicted by a jury on September 8, 2004. Mr. Bishop bears the burden to establish his entitlement to a reduction for acceptance. *United States*

---

[3] Mr. Bishop's argument is confined to the two-level reduction under Guideline § 3E1.1(a). He makes no argument that he is entitled to the additional one-level reduction under Guideline § 3E1.1(b).

*v. Baltas,* 236 F.3d 27, 37 (1st Cir. 2001), *cert. denied,* 532 U.S. 1030 (2001).  If the defendant put the government to its proof at trial, the Guidelines provide the reduction is to be allowed only in "rare situations," where a defendant can "clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial."  U.S.S.G. § 3E1.1, Application Note 2.

Nevertheless, Mr. Bishop points out that the Commentary does not preclude a defendant who goes to trial from receiving an acceptance reduction, and he contends he did not "challenge the factual elements of guilt."  Def.'s Sentencing Mem. (Docket # 53) at 5.  He says at trial he only argued the statute should not be applied to him "because of the doctrine of necessity."  *Id.* To deny the reduction, he argues, would impermissibly penalize him "for asserting his constitutional right to trial."  *Id.* (quoting *United States v. Fells,* 78 F.3d 168, 172 (5th Cir. 1996), *cert. denied,* 519 U.S. 847 (1996)).

Although Mr. Bishop asserted a necessity defense, he failed to convince the jury.  In circumstances of this sort, as the First Circuit recently reiterated, "binding circuit precedent precludes a decrease."  *United States v. Gorsuch,* No. 03-2337, 2005 WL 895209, at *2 (1st Cir. Apr. 19, 2005).  *Gorsuch* addressed a defendant who asserted she lacked the requisite *mens rea* for the imposition of criminal liability, and the First Circuit concluded the sentencing court was precluded from granting acceptance.  *Id*. at *2-5.  As *Gorsuch* noted, the First Circuit has applied this same rule to a defendant who asserted self-defense.  *Id*. at *2 (citing *United States v. Bello,* 194 F.3d 18 (1st Cir. 1999)); *see also United States v. Mikutowicz,* 365 F.3d 65, 75-77 (1st Cir. 2004); *United States v. Waloke,* 962 F.2d 824 (8th Cir. 1992).

Even if Mr. Bishop did not deny possessing the firearms,[4] he urged the jury to conclude his possession was justified by necessity. This Court cannot distinguish between the justification of self-defense, which failed in *Bello,* and the justification of necessity, which must fail here. Moreover, upon hearing Mr. Bishop's explanation, this Court concluded during trial that he had not sufficiently raised the evidentiary predicate for asserting the necessity defense to generate a jury instruction. *See United States v. Smith,* 982 F.2d 681, 685 (1st Cir. 1993); *United States v. Harper,* 802 F.2d 115, 117 (5th Cir. 1986).

## II. CONCLUSION

This Court concludes that Mr. Bishop's 1978 burglary conviction and his 1991 possession of an unregistered firearm conviction are "violent felonies" within the meaning of the ACCA and that he is not entitled to a two-level reduction for acceptance under U.S.S.G. § 3E1.1(a).

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2005

---

[4] There is some disagreement between the Government and Mr. Bishop as to which weapons he admitted possessing. However, in view of the basis for the decision in this case, it is unnecessary to resolve this disparity.